UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
MARIA SGAMBATI,                                             :
                                                            :
                    Plaintiff,    :  **MEMORANDUM DECISION AND**
                                                            :  **ORDER**
         -against-                         :
                                                            :  24-cv-411 (BMC)
                                                            :
THE CITY OF NEW YORK and MICHAEL                            :
YOUSSEF,                                                    :
                                                            :
                                                            :
                    Defendants.   :
----------------------------------------------------------- X

**COGAN**, District Judge.

      This is an action arising from two reports of separate domestic abuse incidents. Plaintiff complains that she was falsely arrested and maliciously prosecuted, in violation of 42 U.S.C. § 1983, because, although her ex-boyfriend, Anthony Delpiano, was also arrested, she should not have been. In the first incident, plaintiff reported that Delpiano had beaten her at her home. Police officers ultimately arrested him. But before he was arrested, about an hour after plaintiff's report, Delpiano reported to the police that plaintiff had come to his house and beaten him. Based on that report, the police officer defendant here, Detective Michael Youssef, arrested her. The disposition of Delpiano's arrest is not in the record; it is plaintiff's arrest that gives rise to this action.

      For the following reasons, defendant's motion for summary judgment is granted on both claims. This is a classic case of dueling stories. Each complainant alleged facts sufficient to constitute probable cause to arrest their alleged perpetrator, and both were arrested. There was sufficient corroborating evidence for Delpiano's story for Youssef to conclude that there was probable cause to arrest plaintiff.

## BACKGROUND

At 6:27 PM on June 6, 2022, a witness called 911 and reported that Delpiano had attacked plaintiff outside of her home on Staten Island. EMTs and police officers from the 120th Precinct responded, by which time Delpiano was gone. There is body-worn camera footage of the responding officers with plaintiff at the scene until 7:27 PM.

On the same day at 8:18 PM, at his home about four and a half miles away, Delpiano called 911 to report that plaintiff had assaulted him at his home. Different police officers, this time from the 122nd Precinct, responded. Delpiano told the officers that plaintiff assaulted him approximately half an hour to forty minutes before his 911 call. Delpiano's neighbor told the officers that the assault happened at 6:40 PM or "something like that, I guess." In the official report, the officers noted that the assault occurred at 7:30 PM.

Youssef, a detective with the 122nd Precinct, was assigned to Delpiano's assault report. Delpiano told Youssef that plaintiff attacked Delpiano after he attempted to "flush" plaintiff's Adderall. While at Delpiano's home, Youssef took pictures of Delpiano's wounds – scratch marks on Delpiano's arms, injuries to Delpiano's neck, and a bite mark on Delpiano's arm. Delpiano also accused plaintiff of throwing his phone to the ground, causing damage. Youssef never spoke with the neighbor who claimed to have heard the assault, but Youssef viewed body-camera footage from Delpiano's house, where Delpiano's neighbor claimed to have heard the assault perpetrated by plaintiff.

Two days later, Youssef went to plaintiff's apartment to make contact. There, Youssef spoke with Carmine Fusco, the owner of a pizza shop close to plaintiff's house. He viewed security footage of the assault at plaintiff's home, but the video shows nothing more than two

2

people struggling. There is no timestamp on the video indicating the time of day when the struggle occurred.

A few days after that, Youssef reached out to the 120th Precinct where plaintiff lived, which also happened to be the Precinct that was investigating the assault that plaintiff had reported. The 120th Precinct responded by forwarding to Youssef an email chain between an officer at the Precinct and plaintiff. In the chain, plaintiff reported that Delpiano's neighbor was threatening to harm her.

On June 20, after being unable to get in contact with plaintiff via email, Youssef was able to speak to her on the phone. During that call, Youssef told plaintiff that he had seen the security footage, that he thought Delpiano's assault report was false, and that Delpiano's wounds were defensive wounds. Youssef expressed the need for plaintiff to come in and self-surrender.

Soon after, plaintiff self-surrendered at the 122nd Precinct. While at the Precinct before the arraignment, Youssef said to plaintiff, "I wish that somebody would do this for my sister." Youssef encouraged her to leave town to avoid Delpiano. Youssef then swore out a misdemeanor complaint against plaintiff, and plaintiff was arraigned. The charges against plaintiff were later dismissed.

Plaintiff has brought claims for false arrest and malicious prosecution under 42 U.S.C. § 1983.[1] Youssef has moved for summary judgment, arguing that there was no constitutional violation or, alternatively, that he is protected by qualified immunity. I will address each claim in turn.

---

[1] Plaintiff originally brought parallel claims under the New York City Administrative Code, but has voluntarily dismissed those claims.

3

## DISCUSSION

Under Federal Rule of Civil Procedure 56, a court can grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A court must "resolv[e] all ambiguities and draw[ ] all permissible factual inferences in favor of the party against whom summary judgment is sought." Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010) (quotation marks omitted).

To prevail on a Section 1983 claim, a plaintiff must show that the defendant violated the plaintiff's constitutional rights. See Baker v. McCollan, 443 U.S. 137, 139, 145 (1979). The Fourth Amendment's right to be free from "unreasonable searches and seizures" provides the basis for false arrest claims under Section 1983. Similarly, the Fourth Amendment is the foundation for malicious prosecution claims. See Cornelio v. Connecticut, 32 F.4th 160, 178 (2d Cir. 2022).

### I.    42 U.S.C. § 1983 False Arrest

In ruling on a Section 1983 claim for false arrest, the court looks to the law of the state in which the police arrested the plaintiff. In New York, a police officer is liable for false arrest when "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (citation omitted). The issue in this case is whether the arrest was privileged.

Probable cause privileges an arrest and is a complete defense to a false arrest claim. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Probable cause exists when a police officer has "reasonably trustworthy information" that suggests the suspect

4

committed a crime. Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (citation omitted). Probable cause is evaluated as of the time of arrest. See Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citation omitted). When a visibly injured person tells the police that someone assaulted them, the police have probable cause even though there may be conflicting accounts. See Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). Once officers have probable cause, they do not need to continue investigating to "eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

Thus, once an officer establishes probable cause, they are not to act as the final judge of the veracity of the evidence; rather, "[t]heir function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). Still, officers are not allowed to ignore "plainly exculpatory" evidence. Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citations omitted). "[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (citation omitted).

Under this framework, Youssef had probable cause to arrest plaintiff based on his interview with Delpiano. Delpiano explained plaintiff attacked him because of a dispute over plaintiff's drugs. Youssef also took pictures of the wounds that Delpiano claimed were the result of plaintiff's attack upon him. Youssef also had access to the statements made by Delpiano's neighbor that he heard the assault. At that point, Youssef had (1) statements by an alleged victim, (2) physical injuries that aligned with the victim's story, and (3) a third-party statement

about the assault.  This is sufficiently trustworthy information from which Youssef could conclude that plaintiff assaulted Delpiano.  See Curley, 268 F.3d at 70.

Despite plaintiff's arguments to the contrary, Youssef did not ignore plainly exculpatory evidence, nor was he obligated to investigate the incident any further.  The security footage does not make it impossible or even unlikely for plaintiff to have assaulted Delpiano later in the day at a different location.  It has no bearing on whether plaintiff would not or could not go to Delpiano's home after the assault at her home – it does not even have a timestamp.  Further, to the extent the security footage indicates Delpiano's injuries are from a different assault, the security footage does not foreclose the question of whether the injuries were sustained at the plaintiff's home or later, nor does it indicate that the two assaults were mutually exclusive.

Plaintiff contends that a reasonable officer would conclude that these pieces of evidence indicate Delpiano's report may be false even if they do not indicate Delpiano's story is entirely inaccurate.  Specifically, she argues that the security footage, alongside the email about the neighbor threatening plaintiff, "raise doubts as to the victim's veracity. . . ."  Harrison v. County of Nassau, 804 F. App'x 24, 27 (2d Cir. 2020) (citations omitted).  However, Youssef only had a duty to investigate further if there was no longer probable cause; here, there remained a "fair probability" of criminal activity based on the neighbor's report, Delpiano's statement, and the physical injuries, even after viewing the video and emails.  See Illinois v. Gates, 462 U.S. 213, 246 (1983).  This is not a case where Delpiano claimed that plaintiff had descended from a space ship and shot at him with a ray gun.  Although it was possible that his injuries were from the assault at plaintiff's home and that Delpiano was lying about the second event, Youssef did not have to make that call.  To the contrary, the security footage indicates that violence was not uncommon in this relationship, lending credence to the report upon which Youssef relied.

In sum, there is nothing in the security footage to indicate that plaintiff could not have gone to Delpiano's home after the first assault to attack Delpiano. These are two different alleged assaults, and neither the footage nor the email would require further investigation into whether the alleged assaults were mutually exclusive. Therefore, probable cause existed at the time of plaintiff's arrest, and the arrest was privileged.

## II.     42 U.S.C. § 1983 Malicious Prosecution

To recover under 42 U.S.C. § 1983 for malicious prosecution, a plaintiff must demonstrate that his Fourth Amendment rights were violated and meet all the elements of malicious prosecution under state law. See Cornelio, 32 F.4th at 178. New York law requires a plaintiff to show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." Dettelis v. Sharbaugh, 919 F.3d 161, 163-64 (2d Cir. 2019) (citation omitted). To satisfy the constitutional violation requirement, plaintiff must express that "there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (citations omitted).

Probable cause in the malicious prosecution context is a reasonable belief "that [the prosecution] could succeed." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). As with the false arrest claim, "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). When there is no change in information, however, the probable cause sufficient for an arrest is also adequate to initiate a prosecution. See Williams v. City of

New York, No. 10-cv-9594, 2012 WL 547508, at *7 (S.D.N.Y. Feb. 17, 2012); see also Powell v. Murphy, 593 F. App'x 25, 28 (2d Cir. 2014).

Plaintiff does not claim that Youssef received any new information between the arrest and the initiation of the prosecution. If probable cause existed for the arrest, which it did, it also existed for the prosecution. Like the false arrest claim, the malicious prosecution claim fails because there was probable cause.

## CONCLUSION

Defendants' motion for summary judgment is granted.

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       July 2, 2025